LESLIE A. WULFF (CSBN 277979)
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
leslie.wulff@usdoj.gov

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH WORSHAM,<br><br>Defendant. | No. 16-cr-00535-EMC<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO USSG §5K1.1**<br><br>Date: April 28, 2021<br>Time: 9:30 a.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 10, 19th Floor |

The government respectfully moves for a seven-level downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") §5K1.1 from defendant's base offense level of 19 due to his cooperation and substantial assistance to the government. In imposing a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553, the government requests that the Court apply a variance proportionate to the variances it applied to coconspirators Stephen Hodge and Christopher Lischewski to avoid unwarranted sentencing disparities. The government also recommends (1) a term of supervised release, (2) a criminal fine of $25,000, (3) a special assessment of $100, and (4) no order of restitution. These terms are consistent with the parties' Federal Rule of Criminal Procedure 11(c)(1)(B) Plea Agreement and the Presentence Report ("PSR").

## BACKGROUND

Defendant Kenneth Worsham was the Senior Vice President of Trade Marketing at Bumble Bee Foods, LLC from 2004 until 2017. (PSR ¶ 5.) In early 2011, at the direction of his superior, Christopher Lischewski, Bumble Bee's then-President and Chief Executive Officer, Worsham first reached out to a contact at StarKist, a competing packaged-seafood company, and agreed to increase the companies' list and net prices. (PSR ¶ 11.) Worsham reported back to Lischewski regarding these communications and the fact that he had reached an agreement with StarKist. (*Id.*) As a result of Worsham's agreement, Bumble Bee and StarKist increased their list prices and net prices, increasing the promotional price points at which retailers would be able to discount canned tuna on grocery store shelves.

When Worsham's first contact at StarKist left the company in the fall of 2011, he formed a relationship with Stephen Hodge, StarKist's Senior Vice President of Sales and Marketing, and acting at the direction of Lischewski continued the price-fixing conspiracy. (PSR ¶ 12.) In late 2011, Chicken of the Sea joined the conspiracy when Worsham, Hodge, and a representative of Chicken of the Sea agreed to announce list-price increases in January 2012. (PSR ¶ 13.) Worsham and Hodge agreed to further list-price increases at their respective companies in the spring of 2012. (*Id.*) From late 2011 through December 2013, Worsham and Hodge agreed each quarter regarding the companies' net prices and promotional price points. These agreements,

and the conspiracy, continued until December 2013 when Hodge was terminated from StarKist for reasons unrelated to the conspiracy. (*Id.*)

As Worsham testified at trial, he kept Lischewski informed of his communications and agreements with competitors at every step of the way. (PSR ¶ 14.) Several witnesses, including Worsham and Lischewski, described Lischewski as a hands-on manager who was intimately involved in Bumble Bee's operations and closely supervised his direct reports. (PSR ¶ 15.) Worsham explained that Lischewski "expected" him to have relationships and communications with his competitors about price and that he understood that the agreements he reached were part of his job. (PSR ¶ 16.) Worsham provided similar testimony during the investigation in anticipation of the indictment presentment.

Worsham began cooperating immediately after the government's price-fixing investigation in the packaged-seafood industry became public in July 2015. On March 15, 2017, Worsham became the second individual to plead guilty in the government's investigation. Following his and coconspirator Scott Cameron's guilty pleas, their then-employer, Bumble Bee, entered a guilty plea and was sentenced on August 2, 2017. Following Worsham's guilty plea, Hodge became the first—and only—individual at StarKist to cooperate in the government's investigation, ultimately leading to the guilty plea of StarKist as well. Worsham continued to cooperate with the government's investigation up to and including in the prosecution of Lischewski. At Lischewski's trial, he testified for almost two full days and was cross-examined for over a day.

The government has no objections to the PSR and agrees with the summary of the offense conduct contained therein.

## ARGUMENT

I. **Sentencing Guidelines Calculation**

A. **Criminal History**

The government agrees with Probation's determination that Worsham's Criminal History Category is I based on its finding that he has no prior criminal history. (PSR ¶¶ 42-43.)

//

### B. Offense Level

The parties and Probation agree that Worsham's offense level is 19. (PSR ¶¶ 3, 29-38; Plea Agreement ¶ 9.) The parties agreed to a ten-level adjustment to the base offense level based on a volume of commerce, after application of U.S.S.G. §1B1.8, of over $300 million but less than $600 million.[1] (PSR ¶ 30; Plea Agreement ¶ 9.) The parties also agreed to a three-level downward reduction for adjustment for acceptance of responsibility under §3E1.1(a) and (b). (PSR ¶¶36, 37; Plea Agreement ¶ 9.)

An offense level of 19 and a Criminal History Category of I result in a guidelines sentencing range of 30 to 37 months.

### C. Fine

The parties have agreed to jointly recommend a criminal fine of $25,000 payable before the 15th day after entry of judgment. (Plea Agreement ¶ 10.) Probation agrees. (PSR, Sentencing Recommendation.) Worsham's guidelines fine range would exceed the $1 million statutory maximum fine for an individual defendant. *See* 15 U.S.C. § 1; U.S.S.G. §2R1.1(c)(1).

### D. Restitution

The parties have agreed not to seek an order of restitution. (Plea Agreement ¶ 10.) Probation agrees. (PSR, Sentencing Recommendation.) Victims in this matter have filed civil suits seeking the treble damages authorized by the Clayton Act, 15 U.S.C. § 15, *et. seq* against Worsham's former employer, Bumble Bee. Those lawsuits are currently pending in the Southern District of California and several of the parties have entered into settlement agreements.

## II. Downward Departure for Substantial Assistance

The government moves for a seven-level downward departure under U.S.S.G. §5K1.1 based on the significance, reliability, extent, and timing of Worsham's substantial assistance to

//

---

[1] As has previously been described to the Court in connection with the sentencing of Bumble Bee and Lischewski, the government applied the same reduction to Bumble Bee, Cameron, and Worsham's volume of commerce under U.S.S.G. §1B1.8 in light of the fact that all three defendants promptly cooperated with the investigation and the government was unable to attribute the information they provided to a single source. The government's methodology in explained in more detail in paragraphs 20 through 23 of the PSR.

the government's investigation. *See* U.S.S.G. §5K1.1(a)(1)-(3) & (5). The government's recommendation results in an offense level 12 and a guidelines sentence of 10 to 16 months.

Worsham was an exemplary cooperator, providing cooperation from the very outset of the government's investigation in 2015 until the trial that concluded more than four years later. Initially he provided this cooperation through Bumble Bee's corporate counsel, even when his own status in the investigation was unknown. At no point during his interactions with the government did Worsham ever shirk from accepting responsibility or deny his role in the conduct. Although Worsham was the second individual to plead guilty, he began the process of negotiating a resolution nearly contemporaneously with Cameron, and the two individuals signed their plea agreements approximately one month apart.

Worsham also consistently provided truthful, complete, and reliable information to the government. During the course of his meetings with the government, Worsham's explanation of his own conduct was detailed and consistent. These explanations were corroborated by the testimony of Cameron and Hodge and the documentary record—some of which was provided to the government by Worsham himself. Worsham's cooperation helped the government better understand not just the inner workings of the price-fixing conspiracy, but the nature and operation of the industry as a whole. Worsham's industry knowledge advanced the government's investigation by facilitating the government's ability to understand the means and motives for the criminal conduct. Over nearly four years, Worsham made himself available to the government whenever his cooperation was needed. This included meetings with the government during difficult periods of Worsham's personal life.

One example of the significance of Worsham's cooperation involves his testimony regarding a May 2, 2012 dinner with Hodge in La Jolla, California at which the two reaffirmed the existence of the conspiracy. The government only learned about this dinner through Worsham's cooperation, and it is unlikely that the government ever would have become aware of the dinner on its own. Worsham informed the government about the dinner and provided the government with the thumb drive that Hodge gave Worsham with copies of StarKist's list price increases as proof that Hodge had followed through on their agreement. Worsham and Hodge's

testimony at Lischewski's trial regarding the dinner helped prove the existence of the conspiracy by establishing a face-to-face meeting between coconspirators for which there was physical evidence in the form of the thumb drive.

Finally, Worsham's testimony was essential to the government's case against Lischewski, the most culpable member of the conspiracy. During his three days of testimony, Worsham testified to the existence of the conspiracy and Lischewski's involvement therein from its inception in the fall of 2010 through its conclusion in December 2013. As the Court recalls, Worsham's testimony was clear, straightforward, accurate, and reliable, and withstood extensive cross-examination by defense counsel.

In light of Worsham's exemplary cooperation, a seven-level downward departure for substantial assistance is appropriate.

### III. Sentencing Recommendation

After calculating the guidelines range, including the applicability of any departure provisions, the court "shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole" to determine the final sentence. U.S.S.G. §1B1.(c); *see generally United States v. Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012) (describing the three-step sentencing procedure under the Sentencing Guidelines). During Lischewski's sentencing, the government argued that a guidelines sentence was reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553(a). Indeed, as the Court itself recognized, the most compelling factors weighing in favor of a guidelines sentence are the need for the sentence to reflect the seriousness of the offense, promote respect for the law and provide just punishment, and afford adequate deterrence to future price-fixing conspiracies and white-collar crime generally. (Sent'g Tr. 48-53, June 16, 2020, *United States v. Lischewski*, No. 18-cr-203-EMC).

The Court applied substantial downward variances in sentencing both Lischewski and Hodge, the two individual coconspirators in the packaged-seafood price-fixing conspiracy to have been sentenced to date. First, as to Lischewski, the Court varied downward nearly fifty percent from the low end of the guidelines range of 78 to 97 months in order to arrive at a sentence of 40 months of custody. While the government disagreed with the basis for the

Court's variance as to Lischewski, the government noted that the Court should apply the same rationale when sentencing the remaining coconspirators such as Hodge to avoid unwarranted sentencing disparities. (Sent'g Mem. 5., ECF No. 47, *U.S. v. Hodge*, No. 17-cr-297-EMC). The Court varied downward from Hodge's guidelines range of 15 to 21 months to arrive at a sentence of 6 months home detention.

The government takes the same position with respect to Worsham, who is similarly situated to Hodge in that both individuals pled guilty and cooperated in the government's investigation. Both men are being sentenced under the same provision of the Sentencing Guidelines that uses volume of commerce as a specific offense characteristic. Both men have publicly acknowledged the seriousness of their conduct and expressed genuine contrition for violating the law. Finally, both men have done what is right in an attempt to repair the harm to society caused by their conduct and deter others from similar crimes. Therefore, the government recommends that the Court apply a variance commensurate with those of the previously sentenced coconspirators to avoid unwarranted sentencing disparities.

**CONCLUSION**

For the reasons set forth herein, the United States respectfully requests that the Court grant the motion for a seven-level downward departure and impose a sentence consistent with the factors set forth in 18 U.S.C. § 3553, as discussed above, a period of supervised release, a fine of $25,000, a $100 special assessment, and no order of restitution.

Dated: April 14, 2021                                   Respectfully submitted,

/s/ *Leslie A. Wulff*
LESLIE A. WULFF
U.S. Department of Justice
Antitrust Division